## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Gilbert Padilla, individually and on behalf of all others similarly situated, | Case No. 20-cv-00658 (SRN/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Caliper Building Systems, LLC, JMC Contracting, LLC, and José Merino, | |
| Defendants. | |

Kayla Marie Kienzle and Michele R. Fisher, Nichols Kaster, PLLP, 80 South 8th Street, Suite 4600, Minneapolis, MN 55402, for Plaintiff.

Davida Sheri McGhee, Jenny Gassman-Pines, and Matthew D. Forsgren, Greene Espel PLLP, 222 South 9th Street, Suite 2200, Minneapolis, MN 55402, for Defendant Caliper Building Systems, LLC.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the motion to dismiss [Doc. No. 11] filed by Defendant Caliper Building Systems, LLC. Plaintiff Gilbert Padilla brought this putative class and collective action against Defendants Caliper Building Systems, LLC, JMC Contracting, LLC, and José Merino, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21 et seq. Padilla alleges that his direct employer, JMC Contracting, and its owner, Merino (collectively, "JMC"), failed to pay a time-and-a-half rate for overtime hours. Padilla asserts that Caliper is also liable for the overtime violations

as a joint employer. Caliper moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Padilla has not plausibly alleged that Caliper is a joint employer. Because Padilla has plausibly alleged that Caliper exerted extensive supervision and control over his work and maintained employment records, the Complaint passes muster under Rule 12(b)(6). Accordingly, the Court **DENIES** Caliper's motion.

## I.    BACKGROUND

Caliper operates as a subcontractor for commercial, residential, and military construction projects. (Compl. [Doc. No. 1] ¶ 9.) To acquire labor for its projects, Caliper contracts with "labor brokers." (*Id.* ¶ 10.) JMC is one such broker. (*Id.* ¶ 11.) JMC hired Padilla and other laborers, and tasked them with performing work "integral" to Caliper's projects. (*Id.* ¶¶ 19-20.) JMC hired and paid the laborers, and informed them of their work assignments and locations. (*Id.* ¶¶ 20, 26.) Laborers were required to work scheduled days and hours and were not given the opportunity to decline work. (*Id.* ¶¶ 26-27.)

Once at a Caliper jobsite, Caliper exercised extensive control over JMC's employees. Padilla alleges that Caliper "was primarily involved in, and responsible for, directing and supervising their work," and required Padilla and other laborers to "follow detailed requirements . . . regarding the manner in which they completed their work." (*Id.* ¶¶ 22-23.) Caliper's foremen "directed and inspected laborers' work to ensure that it complied with . . . Caliper's protocols and specifications." (*Id.* ¶ 24.) Further, Caliper's foremen "directed laborers as to what work to perform, when to perform the work, where to work, and determined which laborers were assigned to which work throughout the workday." (*Id.*) Padilla alleges that the Defendants collectively furnished all materials the

laborers required to perform their duties, such as scaffolding, saws, harnesses, ladders, and extension cords. (*Id.* ¶ 25.)

JMC set Padilla's pay rate, and imposed "the same non-negotiable pay rates and structure" on all laborers. (*Id.* ¶ 21.) Laborers, including Padilla, were often required to work fifty hours per week or more; for this work, JMC paid them on an hourly basis, at a straight-time rate without a premium for overtime hours. (*Id.* ¶¶ 21, 27-28, 30-32.) Laborers would record hours worked in a logbook, which JMC ultimately submitted to Caliper. (*Id.* ¶ 29.) In addition, Caliper separately required the laborers to record their hours on a daily timesheet. (*Id.*)

Padilla filed his Complaint against Caliper, JMC Contracting, and Merino. Caliper moved to dismiss under Rule 12(b)(6). Defendants JMC Contracting and Merino have not filed an answer or otherwise responded to the Complaint.

## II.     DISCUSSION

### A.     Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B.   "Joint Employment" Under the FLSA and the MFLSA

Caliper argues that Padilla has not plausibly alleged that Caliper is Padilla's "employer" for purposes of the FLSA and the MFLSA, warranting dismissal under Rule 12(b)(6). Both statutes define the concept of an "employer" broadly. *See* 29 U.S.C. § 203(d) (2018) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."); *id.* § 203(g) ("'Employ' includes to suffer or permit to work."); Minn. Stat. § 177.23, subd. 5 ("'Employ' means to permit to work."); *id.* § 177.23, subd. 6 ("'Employer' means any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee.").

The Supreme Court has long recognized that the breadth of these definitions reaches many working relationships which might not fit prior common law definitions of employment. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–51 (1947) ("This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category."). Consistent with the statute's broad reach, courts have traditionally "liberally construe[d]" the FLSA, "'to the furthest reaches consistent with

congressional direction' in fulfillment of its humanitarian and remedial purposes." *Perez v. Contingent Care, LLC*, 820 F.3d 288, 292 (8th Cir. 2016) (quoting *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975)) (alterations in original).[1]

Because the definition of "employer" reaches so broadly, two entities may qualify as "employers" of the same employee with respect to the same working hours. In such a situation, the "joint employers" are jointly liable for overtime wages. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973). Whether an entity is a joint employer is a question of law. *Catani v. Chiodi*, No. CIV.00-1559 (DWF/RLE), 2001 WL 920025, at *6 (D. Minn. Aug. 13, 2001).

In evaluating whether an entity is a joint employer, the inquiry—under both the FLSA and the MFLSA—focuses on the economic realities of the relationship. *Blair v.*

---

[1] Notably, the Supreme Court, in *Encino Motorcars, LLC v. Navarro*, described as a "flawed premise" the principle that "the FLSA 'pursues' its remedial purpose 'at all costs.'" 138 S. Ct. 1134, 1142 (2018) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013)). Consequently, the Court held that the statute's exemptions must be given a "fair reading," rather than a narrow one. *Id.* Although the *Encino* Court was interpreting an exemption to the FLSA rather than the statute's definition of "employer," in early 2020 the Department of Labor applied *Encino's* reasoning to the statute's definition of employer as well. The Department adopted new regulations narrowing its test for when two entities are "joint employers." Joint Employer Status Under the Fair Labor Standards Act, 85 FR 2820-01, at 2824–25 (Jan. 16, 2020); *see* 29 C.F.R. § 791.2(a) (2020). A federal court recently ruled that the new regulations violated the Administrative Procedures Act, reasoning in part that *Encino* addresses the FLSA's exemptions and did not purport to overrule case law broadly construing the statute's definition of employer. *See New York v. Scalia*, No. 1:20-CV-1689-GHW, 2020 WL 5370871, at *24 (S.D.N.Y. Sept. 8, 2020) ("[T]he Supreme Court has repeatedly held that the FLSA should be construed 'liberally' because 'broad coverage is essential to accomplish [its] goal[s.]' Although *Encino II* rejected the principle that exemptions to the FLSA 'should be construed narrowly,' it did not purport to overrule this prior caselaw." (citations omitted) (alterations in original)).

*Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Le v. Regency Corp.*, 957 F. Supp. 2d 1079, 1089–90 (D. Minn. 2013). This Court has generally looked to the factors identified in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). Namely, the court asks whether the alleged joint employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Catani*, 2001 WL 920025, at *6 (citing *Bonnette*, 704 F.2d at 1470). The court must examine the totality of the circumstances, and no one factor is dispositive. *Id.* at *3.

### C.  Padilla Has Plausibly Alleged Caliper's Status as a Joint Employer

Because the economic realities test is a fact-intensive inquiry, challenges to a defendant's joint employer status are rarely appropriate on a motion to dismiss. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143–44 (2d Cir. 2008) ("Because of the fact-intensive character of a determination of joint employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment."); *Arnold v. DirecTV, Inc.*, No. 4:10CV00352AGF, 2011 WL 839636, at *6 (E.D. Mo. Mar. 7, 2011) (observing that a defendant's status as an FLSA "employer" is a matter "that is appropriate for consideration on a motion for summary judgment, but not on a motion to dismiss"). Although this Court's analysis is generally guided by the four *Bonnette* factors, the economic realities test looks to the totality of the circumstances, and no one factor is dispositive. *Lindsay v. Clear Wireless LLC*, No. CIV. 13-834 (DSD/FLN), 2014 WL 3573956, at *2 (D. Minn. July 18, 2014). Certainly, a plaintiff is not required to

6

plead facts supporting all the factors to survive a motion to dismiss. *Farah v. Alpha & Omega USA, Inc.*, No. CV 16-996 (RHK/TNL), 2016 WL 11670182, at *2 (D. Minn. June 24, 2016) ("The economic-reality test is an *evidentiary* one, turning on the facts—the 'reality'—of the parties' relationship. But plaintiffs are not required, *at the pleading stage*, to allege facts meeting every one of the factors courts consider when determining whether an employment relationship exists." (emphasis in original)).

Indeed, cases granting motions to dismiss on the joint employer issue typically involve conclusory allegations or bare recitations of the elements. *See Harris v. Med. Transportation Mgmt., Inc.*, 300 F. Supp. 3d 234, 243 (D.D.C. 2018) ("In the rare instances where courts have dismissed an FLSA claim premised on joint employment on a Rule 12(b)(6) motion to dismiss, they do so when the plaintiff failed to allege *any* facts that would support the inference that the defendant had any control over the employment relationship.").

Caliper points to *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923 (N.D. Cal. 2019), as a "particularly instructive decision that found no joint employment at the pleading stage." (Def.'s Reply Mem. [Doc. No. 19] at 4.) But *Lesnik* involved a complaint which, albeit lengthy, included only vague and conclusory allegations pertinent to some *Bonnette* factors, and no allegations at all pertinent to others. In *Lesnik*, the court examined a sprawling 108-page third amended complaint, containing thirteen causes of action against nearly a dozen defendants. *Lesnik*, 374 F. Supp. 3d at 935. The plaintiff voluntarily dismissed all but two defendants, and the court applied the four *Bonnette* factors to the complaint's allegations against the remaining defendants. *Id.* at 933, 942. In its analysis,

the court repeatedly emphasized the complaint's "vague and conclusory" allegations; in fact, with respect to one of the remaining defendants, the court found no allegations at all pertinent to three of the four factors. *Id.* at 942–46.

By contrast, Padilla's Complaint includes plausible, non-conclusory allegations related to Caliper's supervision and control over Padilla's working conditions and Caliper's maintenance of employment records. On the issue of supervision and control, the Complaint contains extensive allegations of Caliper's control over Padilla and other laborers at the worksite. Caliper "was primarily involved in, and responsible for, directing and supervising their work," and required Padilla and other laborers to "follow detailed requirements . . . regarding the manner in which they completed their work." (Compl. ¶¶ 22-23.) Caliper's foremen "directed and inspected laborers' work to ensure that it complied with . . . Caliper's protocols and specifications." (*Id.* ¶ 24.) And the foremen "directed laborers as to what work to perform, when to perform the work, where to work, and determined which laborers were assigned to which work throughout the workday." (*Id.*) Finally, Padilla alleges that the "Defendants" collectively furnished all materials required to perform the work, from which the Court can infer that Caliper participated in furnishing the requisite materials. (*Id.* ¶ 25.)

Caliper asserts that Padilla's allegations are merely consistent with the "quality control" typically asserted in contractor-subcontractor relationships, and do not rise to the level of control necessary to make Caliper a joint employer. (Def.'s Reply Mem. 11-13.) But Caliper's argument is better suited for a motion for summary judgment on a full record, not a motion to dismiss on the pleadings. Indeed, the cases Caliper cites were each resolved

at summary judgment. *See, e.g.*, *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 690 (D. Md. 2010) (observing, at summary judgment, that *Bonnette's* second factor "does not contemplate the generic control exercised by a supervisor over an independent contractor. Therefore, detailed instructions and a strict quality control mechanism will not, on their own, indicate an employment relationship" (citation omitted)).

Regarding Caliper's maintenance of employment records, the Complaint alleges that "Defendants" collectively required Padilla to record his hours in a logbook, which JMC ultimately submitted to Caliper. (Compl. ¶ 29.) And the Complaint alleges that Caliper also required Padilla to record hours worked on a daily timesheet. (*Id.*) As Caliper points out, the Complaint does not say what Caliper did with the logbook or timesheets, or why that information was collected. But Padilla's allegations are sufficient to raise the reasonable inference that the logbook and timesheets served some employment function, and at this stage the Court must make that inference. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

Thus, Padilla has plausibly alleged facts supporting Caliper's status as a joint employer under the FLSA and the MFLSA. Although the Complaint does not allege facts squarely addressing the other *Bonnette* factors, the economic realities test is fact intensive, the *Bonnette* factors are non-exclusive, and a plaintiff need not plead facts relevant to all four factors to survive a motion to dismiss. *Lindsay*, 2014 WL 3573956, at *2; *Farah*, 2016 WL 11670182, at *2. Therefore, the Court denies Caliper's motion to dismiss.

III.    **CONCLUSION**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Caliper Building Systems, LLC's Motion to Dismiss [Doc. No. 11] is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 21, 2020                            s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge